# Exhibit 1

## The Agreement

# SALES CONTRACT

Contract No.:APP2D0355

21-Feb-23

| The Seller | SHENZHEN LAMP TECHNOLOGY CO., LTD | | |
|---|---|---|---|
| | Add: 6 Lanjing North Road, Pingshan,District,Shenzhen Guangdong, China, 518118 | | |
| | Tel : +86 755 8179 5837 | Fax : +86 755 2768 3206 | |
| | Contact Person: Christina Liu | *E-mail: christina.liu@lampro.net | |

| The Buyer | AG light and sound Inc | |
|---|---|---|
| | Add: 4660 Berg Street Suite 130 North Las Vegas Nevada 89081 | |
| | Tel : 613-471-3700 | Fax : |
| | Contact Person: Andrew | *E-mail: andrew@ag,tc |

| No. | Name | Specification | Quantity | Unit | Unit Price (USD) | Amount(USD) |
|---|---|---|---|---|---|---|
| 1 | Outdoor RS3.9PLUS 500x1000mm | Outdoor SMD1921<br>Module size: 250*500mm<br>1/16 scan, 5000cd brightness<br>ICND2153 high refresh rate driver IC<br>Aplus AP211 power supply<br>500*1000mm magnesium alloy cabinet<br>Curve lock<br>Nova A5SP receiving card included<br>Cabinet quantity: 450pcs | 450 | pcs | 724.00 | 325800.00 |
| | Outdoor RS3.9PLUS 500x500mm | Outdoor SMD1921<br>Module size: 250*500mm<br>1/16 scan, 5000cd brightness<br>ICND2153 high refresh rate driver IC<br>Megmeet MSP260-4.5 power supply<br>500*500mm magnesium alloy cabinet<br>Curve lock<br>Nova A5SP receiving card included<br>Cabinet quantity: 100pcs | 100 | pcs | 425.00 | 42500.00 |
| | Shipping cost | DHL for power box from china | 1 | pcs | 450.00 | 450.00 |
| | | | | | Subtotal | 368,750.00 |

| | Accessories and Spare Parts | | Quantity | unit | Unit Price (USD) | Amount(USD) |
|---|---|---|---|---|---|---|
| 2 | Hanging Beam | 0.5m hanging bar (can be used for groud beam) | 70 | pcs | 95 | 6650 |
| | Hanging Beam | 1.0m hanging bar (can be used for groud beam) | 15 | pcs | 145 | 2175 |
| | Flight Case | Wooden flight case(6pcs 500*1000 cabinet in one flight case) | 75 | pcs | 165 | 12375 |
| | Flight Case | Wooden flight case(8pcs 500*500 cabinet in one flight case) | 13 | pcs | 160 | 2080 |
| | Flight Case | Wooden flight case for spares | 12 | pc | 160 | 1920 |

1/12



|   |   |   |   |   | Subtotal | 25,200.00 |
|---|---|---|---|---|---|---|
| 3 | FREE Spare Parts |   | Quantity | unit | Unit Price (USD) | Amount(USD) |
|   | LED Panel | 500*500mm cabinet | 4 | pcs | 425 | FREE |
|   | LED | SMD2727 | 5000 | pcs | 0.2 | FREE |
|   | Driver IC | ICND2153 | 600 | pcs | 0.5 | FREE |
|   | Module | RS3.9P module | 55 | pcs | 100 | FREE |
|   | Mask | RS3.9P mask | 200 | pcs | 0.4 | FREE |
|   | Receiving Card | Nova A5SP with hub | 20 | pcs | 30 | FREE |
|   | PSU | Aplus AP211 | 15 | pcs | 47 | FREE |
|   | PSU | Megmeet MSP260-4.5 power supply | 6 | pcs | 26 | FREE |
|   | Power box | Complete power box with hub, receiving card,PSU | 6 | pcs | 110 | FREE |
|   | Side Lock | One set side lock | 20 | pcs | 10 | FREE |
|   | Hanging lock | One set hanging lock | 20 | pcs | 3 | FREE |
|   | Input power cables | 10m input power cable | 12 | pcs | 25 | FREE |
|   | Input data cable | 30m input data cable | 10 | pcs | 20 | FREE |
|   | Power cable | Power cable between cabinet | 30 | pcs | 12 | FREE |
|   | Data cable | Data cable between cabinet | 30 | pcs | 8 | FREE |
|   |   |   |   |   | TOTAL EXW Alabama Warehouse | 393,950.00 |
|   |   |   |   |   | Destination | USA |
|   | Payment | All payments are T/T. T/T 30% down payment, T/T 70% before shipment. |   |   |   |   |
|   | ETD | Within 10 days upon order confirmation and the deposit (if any) received by Seller. |   |   |   |   |
|   | Packing and Shipping Mark | Flight Case |   |   |   |   |
|   | Transport | By truck |   |   |   |   |
|   | Product Warranty | The warranty period shall be **24** months from the date on which the Products are shipped out from the Seller's warehouse, except for otherwise stipulated in the warranty cards attached to the Products. |   |   |   |   |
|   | **BANK INFORMATION** |   |   |   |   |   |
|   | Beneficiary Bank | AGRICULTURAL BANK OF CHINA LIMITED SHENZHEN BUJI SUB-BRANCH |   |   |   |   |
|   | Account Name | SHENZHEN LAMP TECHNOLOGY CO LTD |   |   |   |   |
|   | SWIFT Code | Redacted |   |   |   |   |
|   | Account Number | Redacted |   |   |   |   |
|   | Account Name | SHENZHEN LAMP TECHNOLOGY CO LTD |   |   |   |   |



| Bank Address | NO.6, LANJING NORTH ROAD, KENGZI STREET, PINGSHAN NEW DISTRICT,SHENZHEN |



| GENERAL TERMS |
|---|
| **1. Interpretation**<br>a) Clause and other headings are for ease of reference and do not affect the interpretation of the S/C;<br>b) A party to the S/C includes that party's permitted assigns;<br>c) "Or" has the inclusive meaning frequently identified with the phrase "and/or";<br>d) "Including" and similar words do not imply any limit;<br>e) References to "hereunder", "herein" or "hereof" relate to the S/C as a whole ;<br>f) A statute includes references to regulations, orders or notices made under or in connection with the statute or regulations and all amendments, replacements or other changes to any of them;<br>g) No term of the S/C is to be read against a party because the term was first proposed or drafted by that party;<br>h)"ETD" means Estimated Time for Departure of the Product from the Seller's factory. |
| **2. Acceptance of Orders**<br>Buyer and Seller agree that Buyer may purchase Products by issuing orders/agreements/contracts with Seller and such orders/agreements/contracts will be subject to the terms and conditions of the S/C. No general terms and conditions of orders/agreements/contracts shall apply or be effective to contradict, modify or delete terms from the S/C in any manner whatsoever.Commencement of performance or shipment shall not be construed as acceptance of any of Buyer's terms and conditions which are different from or in addition to those contained herein. If a S/C is not earlier formed by mutual agreement in writing, acceptance by Buyer of products or services furnished by Seller pursuant hereto shall be deemed assent to all of the terms and conditions of the S/C. |
| **3. Delivery and Acceptance**<br>3.1 Seller will deliver the Products to the Buyer as set out in the S/C.<br>3.2 Buyer shall receive the Products in time and complete the inspection and acceptance in accordance with the S/C within 7 days after receipt, and if there is any objection, it shall be submitted in writing within the above time limit, otherwise the Products shall be deemed to be qualified. |
| **4. Product Warranty**<br>4.1 No warranty liability shall be assumed by the Seller for defects or damages due to the following conditions:<br>a) Defects, malfunctions or damages caused by improper use, improper handling, improper operation, improper installation/disassembly of the Products or any other customer misconduct. Defects, malfunctions or damages caused during transportation.<br>b) Unauthorized disassembly and repair, improper use or improper maintenance not in accordance with the product manual.<br>c) Man-made damages, physical damages, accident damages and product misuse.<br>d) Product damage or malfunction caused by Force Majeure Events, including but not limited to war, terrorist activities, floods, fires, earthquakes, lightning, etc.<br>e) Other repairs not caused by product quality, design, and manufacturing.<br>f) The Product shall be stored in a dry, ventilated environment. Any product defects, malfunctions or damages caused by storage in an external environment that does not comply with the Product manual, including but not limited to extreme weather, humidity, salt haze, pressure, lightning, sealed environment, compressed space storage etc.<br>g) Repairs after Warranty Period.<br>4.2 The Seller shall duly perform warranty liability, and the Buyer is not entitled to defer or refuse any payment with the excuse of quality issues. |
| **5. Charging Service**<br>The Seller provides the following service which shall be charged as per the Seller's service fee standard.<br>5.1 Repair service that is not covered by the Warranty Policy.<br>5.2 Annual inspection service, on-site installation and commissioning supervision, on-site support service for big events, on-site calibration service, etc.<br>5.3 Dispatching engineers to the Buyer for on-site training.<br>For the above services, the Buyer shall bear all travel expenses, accommodation and pay technical service fee for personnel dispatched by the Seller (For senior engineer USD500/person per day, for engineer USD300/person per day. Each person works 8 hours per day. Overtime shall be charged as per hourly rate). |
| **6. Retention of Title**<br>6.1 Products supplied shall remain the property of Seller until the full payment has been paid by Buyer. In the event that: (i) the Buyer has delayed the shipment for 45 calendar days from the ETD; and (ii) the deposit or balance of payment herein to the Seller's designated bank account has been overdue for 45 calendar days, the transaction shall be deemed to be canceled, and the Seller is automatically entitled to have the non-disputable right of in possession of full ownership of the Products without any liability of refunding any part of the deposit (if any) and the Buyer shall compensate Seller's all incurred losses exceeding the deposit. In order to enforce these rights, the Seller may enter the premises of the Buyer and take the reserved Products and/or demand the assignment of the Buyer's surrender claims against the Buyer's customers.<br>6.2 The Buyer is obliged to treat the reserved Products carefully, in particular it is obliged to insure them sufficiently at its own expense against fire, water and theft damage to the value.<br>6.3 The Buyer is not permitted to pledge or transfer the Products subject to retention of title. In the event of access to third parties to the reserved Products or in the event of the application for insolvency proceedings over the assets of the Buyer, the Buyer shall immediately notify the Seller in writing. If third parties access the reserved Products or the claims assigned in advance, in particular through enforcement measures, then the Buyer must inform the Seller immediately and provide the Seller with all documents required to implement the property rights. In the event that the third party is unable to reimburse the Seller for the judicial or extrajudicial costs arising in this context, the Buyer is liable for this. |
| **7. Inspection** |

**LAMPRO 蓝普**

**7. Inspection**
7.1 Prior to shipment, Buyer is entitled to inspect the Products through its authorized inspectors and/or consultants and/or third party inspection agencies ("Inspection Team"). If the Buyer decides to do the inspection, it shall notify the Seller in writing in advance and both parties shall jointly determine the date and place for the inspection of the products. The inspection team shall inspect the products on the determined date and place, and all costs and charges of the Inspection Team shall be borne and paid by the Buyer.
7.2 Upon the successful inspection, the Inspection team shall sign and stamp the Inspection Clearance Certificate prepared by the Seller and the Seller can proceed with packing and dispatch.

**8. Warehouse Charges**
Upon the completion of the Products and the notification made to the Buyer, if the Buyer failed to settle the remaining outstanding payment or arrange the shipment, the Seller is entitled to impose the warehouse charges after 5 working days of notification. The warehouse charges per day will be 0.1% of the S/C amount until full payment made or the Products shipped out from Seller's warehouse (whichever occurs later), if more than 45 days, the provisions of Article 6 hereof shall apply. Any additional expenses or damages incurred by the delay or the lack of non-cooperation shall be compensated by Buyer.

**9. Intellectual Property Rights**
The sale of products or provision of services hereunder does not convey any express or implied license under any patent, copyright, trademark or other proprietary rights owned or controlled by Seller, whether relating to the Products sold or any manufacturing process or other matter. All rights under any such patent, copyright, trademark or other proprietary rights are expressly reserved by Seller. Furthermore, Buyer agrees not to infringe, directly or indirectly, any patents of Seller and its subsidiaries with any combination or system incorporating a product sold hereunder. If the Buyer is in breach of this Article herein, or in infringement of the Seller's Intellectual Property, it shall compensate the Seller with all its claims, damages and losses.

**10. Confidentiality**
Both Parties acknowledge that during the course of the S/C, each may obtain confidential information regarding the other Party's business. Both Parties agree to treat all such information and the terms of the S/C as confidential and to take all reasonable precautions against disclosure of such information to unauthorized third parties during and after the term of the S/C. Upon request by an owner, all documents relating to the confidential information will be returned to such owner.

**11. Environment and Safety Compulsory Regulations**
Products supplied by the Seller shall comply with environmental and safety compulsory regulations of the Destination informed by the Buyer to the Seller in written upon the Effective date (if any). If the Buyer uses, markets or sells the Products out of the Destination, the Seller is no longer liable for making the Products comply with the environmental and safety compulsory regulations of such places.

**12. Export Regulations**
Both Parties acknowledge and accept the Export Regulations and Controls of China, U.S, EU and the United Nations. The Buyer warrants itself is in all compliance with such Regulations and Controls. Both Parties agree to comply with the U.S. Foreign Corrupt Practices Act, U.S. Anti-Boycott laws and all applicable export laws and regulations of China, U.S., EU and the United Nations. And the Buyer warrants, its shareholders, and the Buyer's related third parties and their shareholders are not in the OFAC's Sanctions List of U.S. and the Unreliable Entities and Sanctions List of China. Where either party is in breach of this Clause, it shall compensate the other party for all damages and losses.

**13. Force Majeure**
13.1 Each Party shall be excused from liability for the failure or delay in performance of any obligation under the S/C by reason of any event beyond such Party's reasonable control including but not limited to Acts of God, fire, flood, explosion, earthquake, or other natural forces, war, civil unrest, accident, any strike or labor disturbance, or any other event similar to those enumerated above, except the payment obligation borne by Buyer. Such excuse from liability shall be effective only to the extent and duration of the event(s) causing the failure or delay in performance and provided that the Party has not caused such event(s) to occur and continues to take diligent, good faith efforts to avoid the effects of such event and to perform the obligation.
13.2 Written notice of a Party's failure or delay in performance due to force majeure must be given to the unaffected Party promptly thereafter but no later than five (5) days after its occurrence which notice shall describe the force majeure event and the actions taken to minimize the impact thereof and furnish the written notice within fourteen (14) days with a governmental certificate or the like attesting such event, then the obligations of the Party invoking this provision shall be suspended to the extent necessary by such event.
13.3 Notwithstanding the foregoing, should the event(s) of force majeure suffered by a Party extend beyond a four-month period, the other Party may then terminate the S/C by written notice to the non-performing Party. An act or omission shall be deemed within the reasonable control of a Party if committed, omitted, or caused by such party, or its employees, officers, agents, or affiliates.
13.4 The foregoing shall not apply to Buyerr's payment obligations.

**14. Governing Law and Dispute Resolution**
14.1 The Parties agree that this S/C shall be governed, interpreted and construed both as to performance and validity in accordance with the laws of the People's Republic of China ("P.R.C", excluding the United Nations Convention on Contracts for the International Sale of Goods), without regard to its conflicts of laws rules. The remedies afforded by the laws of P.R.C are in addition to the remedies set out in this S/C.
14.2 All disputes arising from the execution of or in connection with the S/C shall be settled through friendly negotiation between both parties. In case no settlement to dispute can be reached through negotiation. The disputes shall be submitted for arbitration in accordance with the rules of the Shenzhen Court of International Arbitration by one (1) arbitrator appointed in accordance with the said rules. The place of arbitration shall be Shenzhen, and the arbitration shall be conducted in the English language. The losing Party shall bear all of the arbitration fees, attorney fees, preservation fees, preservation guarantee fees, appraisal fees and notary fees incurred by the arbitration and other expenses of the other Party for realization of rights. The arbitral award is final and binding on the Parties.

**LAMPRO 蓝普**

and other expenses of the other Party for realization of rights. The arbitral award is final and binding on the Parties.

### 15. Term and Termination

15.1 This S/C will commence on the Effective Date and shall be in full force until completion, unless terminated earlier pursuant to this S/C.

15.2 Buyer may terminate the S/C if Seller materially defaults in the performance of its obligations hereunder and fails to cure such default within sixty days after written notice thereof from Buyer. Such termination shall be Buyer's sole remedy in the event of a material default by Seller. Where Buyer terminates the S/C for any other reasons excluding the aforementioned, Buyer shall pay liquidated damages at a rate of 30% of the amount of the Products to Seller.

15.3 Buyer shall not change the S/C except provided that the request for change is made at least thirty days before the ETD of the Products and all incurred costs and charges arising from or in connection to such change are borne by Buyer. Each change of the S/C shall be subject to Seller's acceptance, and the ETD shall be recalculated from the date of Seller's acceptance.

15.4 Buyer shall be deemed in material default under the S/C if Buyer fails to pay any amounts when due hereunder, cancels or attempts to cancel the S/C prior to delivery or refuses delivery or otherwise fails to perform any of its obligations hereunder or fails to pay Seller any sums due under any other S/C or otherwise. In the event of a material default by Buyer, Seller may, upon written notice to Buyer, (i) suspend its performance and withhold shipments, in whole or in part, (ii) terminate the S/C, (iii) declare all sums owing to Seller immediately due and payable and/or (iv) recall products in transit, retake same and repossess any products held by Seller for Buyer's account, without the necessity of any other proceedings, and Buyer agrees that all products so recalled, taken or repossessed shall be the property of Seller. Exercise of any of the foregoing remedies by Seller shall not preclude exercise of any of the others, and neither the existence nor exercise of such remedies shall be construed as limiting, in any manner, any of the rights or remedies available to Seller under the laws of P.R.C.

15.5 Termination of the S/C shall not relieve either Party from any obligation to pay the other any amounts due to the other under the S/C. Any terms of the S/C which by their nature survive the expiration or termination of the S/C shall survive any such expiration or termination.

### 16. Warranties and Representations

16.1 Each Party represents and warrants to the other that it is a legal entity/personnel duly incorporated and existing under the laws of the country where it is registered and has full power and authority to enter into this S/C and to perform its obligations under this S/C.

16.2 Seller warrants to Buyer that the Products will conform substantially to the specification of the Products herein. Any warranties, obligations and liabilities of Seller set forth expressly in this S/C are exclusive and Seller makes no other warranties or representations. All implied warranties, conditions and representations are disclaimed. To the extent permitted by law, Buyer hereby waives and releases all other warranties, obligations, liabilities, whether express or implied, including but not limited to (i) any implied warranty or condition of merchantability or of fitness for a particular purpose, and (ii) any obligation or liability on the part of Seller to anyone of any nature by reason of the design, manufacture, sale, repair of the Products and service rendered.

### 17. Liabilities

17.1 Where Seller fails to make the delivery duly, Seller shall pay liquidated damages at a rate of 0.1% of the amount of the deferred Products to the Buyer per day until the completion of its delivery obligation.

17.2 Where Buyer fails to make the payment duly, Buyer shall pay liquidated damages at a rate of 0.1% of the overdue amount to the Seller per day until the completion of its payment obligation, and the ETD shall be automatically extended without responsibility of Seller.

17.3 In the event of damage or loss caused by transportation, the Buyer shall object to freight forwarder/carrier within 7 days of receipt of the Products (if by air) and within 14 days of receipt of the Products (if delivered by sea), arguing that the insurance company other than the Seller is liable for any liability resulting from the transportation. If the Products are not covered by shipping insurance due to the Buyer, Buyer shall bear the risks and losses. Buyer shall notify the Seller within the period stipulated in this article for quality discrepancy and claim. For failing to notify the Seller within the time limit herein, the Products shall be deemed all accepted and fully in compliance with the S/C.

17.4 Any claim excluding clauses 17.3 by the Buyer regarding the Products should be raised within 30 days after the Products' arrival at the port/place of destination specified in the relative B/L and/or transport document and supported by a survey report issued by a surveyor approved by the Seller. Claims in respect of matters within the responsibility of insurance company/shipping company/other transportation organizations shall not be deemed as the Seller's obligations.

17.5 Seller shall in no event be liable for any incidental, special, or consequential damages of any nature, even if Seller has been advised

Docusign Envelope ID: 07DAFA3B-168C-4190-B30D-53A526BF1C70

# LAMPRO 蓝普

17.5 Seller shall in no event be liable for any incidental, special, or consequential damages of any nature, even if Seller has been advised of the possibility of such damages, and in no event shall the aggregate liability of the Seller under this S/C exceed 10% of the value of the Products or the actual payment received by the Seller, whichever with smaller value. Seller's liability, if any, for defective Products, is limited to replacement, repair of the defective Products, in accordance with the Warranty Policy, at Seller's option.

## 18. Miscellaneous Provisions

18.1 Assignment. This S/C may not be assigned by any party without the prior written consent of the other party, and shall be binding upon its successors or receivers.
18.2 Severability. If any provision or part provision of the S/C is held invalid, illegal or unenforceable by a court of competent jurisdiction, the remainder of the S/C will be valid and enforceable and the Parties will negotiate in good faith a substitute, valid and enforceable provision which most nearly puts into effect the intent of the Parties.
18.3 No Waiver. The S/C may not be altered, modified, or amended in any way except in writing signed by both Parties. The failure of a Party to enforce any provision of the S/C will not be construed to be a waiver of the right of such Party to thereafter enforce that provision or any other provision or right.
18.4 Notices. All notices, demands or other communications required or permitted to be given under the S/C by either Party to the other Party may be effected either by personal delivery in writing or by mail, registered or certified or by email herein. Mailed notices or notices personally delivered shall be addressed to the other Party at the address herein, but each Party may change such address or email account by written notice in accordance with this paragraph. Notices delivered personally or by email will be deemed communicated as of actual receipt. Mailed notices will be deemed communicated as of five (5) days after mailing.
18.5 Entire Contract. This S/C constitutes the entire contract of the Parties and supersedes any previous contracts, arrangements, understandings and negotiations between them relating to the subject matter of this S/C.
18.6 Counterparts. This S/C may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute one and the same S/C. Execution of a facsimile or electronic copy of the S/C shall have the same force and effect as execution of an original, and a facsimile or electronic signature shall be deemed an original and valid signature.

**IN WITNESS WHEREOF**, the persons signing this S/C on behalf of the Parties hereto warrant, covenant and represent they are duly authorized to execute this S/C on behalf of the Parties for whom they are signing. The Parties, by their authorized representatives, have executed this S/C as of the Effective Date.

| Seller: SHENZHEN LAMP TECHNOLOGY CO., LTD | Buyer: AG light and sound Inc |
|---|---|
| Signature: | Signature: *[signed]* |
| Printed Name: | Printed Name: Andrew Gumper |
| Title: | Title: President |